**OLAN MILLS, INC. and Professional Photographers of America, Inc., Plaintiffs/Counterclaim Defendants,**

v.

**LINN PHOTO CO., Defendant/Counterclaim Plaintiff.**

No. C89–0004.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Oct. 10, 1991.

James C. Nemmers, Cedar Rapids, Iowa, David Ladd, David E. Leibowitz, Thomas W. Kirby, and Bruce. G. Joseph, Wiley, Rein & Fielding, Washington, D.C., for plaintiffs.

Richard M. Calkins, Des Moines, Iowa and Kelly R. Baier, Steven D. Nelson, Cedar Rapids, Iowa, for Linn Photo Co.

## ORDER

HANSEN, District Judge.

This matter is before the court on defendant's resisted motion for summary judgment, filed November 7, 1990; plaintiffs' resisted motion to limit jury demand, filed February 4, 1991; plaintiffs' resisted cross-motion for partial summary judgment, filed February 4, 1991; defendant's resisted motion to strike certain matters filed by plaintiffs in connection with their resistance to motion for summary judgment, filed February 15, 1991; defendant's conditionally resisted motion for leave to file supplemental reply brief, filed May 29, 1991; and plaintiffs' cross-motion for leave to file sur-reply to supplemental reply brief, filed June 11, 1991. The motions for leave to file reply briefs will be granted.

### Motion to Strike

Defendant asks the court to strike certain matters filed with plaintiffs' resistance to defendant's motion for summary judgment, filed February 4, 1991, specifically: (1) the partial transcript of the proceeding in *Professional Photographers of America v. 1240 Camera Co.;* (2) the document entitled "defendant's memorandum in opposition to plaintiffs' motion for summary judgment," filed in *Olan Mills, Inc. v. Eckerd Drug of Texas, Inc.;* and (3) plaintiffs' Local Rule 14(h) statement of uncontested facts.

Defendant requests the court to strike the first two documents on the basis that there is no verification as to the authenticity of these documents and that they, therefore, are not admissible. The court declines to strike these documents from the file. If the court decides to utilize these materials in the following discussion, the court will carefully consider the weight, if any, to be given them.

With respect to the plaintiffs' statement of uncontested facts, defendant argues that that statement differs materially from the stipulated facts included in the final pretrial order, filed March 8, 1991. The court will view the stipulated facts contained in the final pretrial order as uncontested. With respect to any other fact which one party asserts is uncontested, the court will determine if that fact is material and in dispute as is necessary for the resolution of the pending summary judgment motions.

*Motions for Summary Judgment*

### 1. Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky,* 828 F.2d 461, 462 (8th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman,* 827 F.2d 346, 350 (8th Cir.1987).

The pending motions for summary judgment involve plaintiffs' claims of copyright infringement, *see* plaintiffs' complaints, filed February 16, 1988, and defendant's counterclaim for breach of indemnity or hold harmless agreement. *See* amended answer and counterclaims, filed March 12, 1991, at 26. The summary judgment motions do not involve defendant's counterclaims for combination and conspiracy, unlawful restraint of trade, unlawful restraint of competition, fraud, and abuse of process. *See id.* at 11–25.

### 2. Facts

The stipulated facts, from the final pretrial order, filed March 8, 1991, are generally as follows. Plaintiff Olan Mills, Inc. (Olan Mills) operates more than 1,000 portrait studios around the country. Plaintiff Professional Photographers of America, Inc. (PPA) is a professional society of photographers. Defendant Linn Photo Company (Linn Photo) is in the business of selling photographic equipment and supplies, developing print and slide film, and reproducing photographs. In mid–1986, David Phillips, Esq., general counsel for Olan Mills, informed Linn Photo that Olan Mills believed that Linn Photo was violating Olan Mills' copyrights. In 1987, Olan Mills took a number of photographs of Olan Mills' employees and their families. Olan Mills registered its copyright in the four photographs involved in this case with the United States Copyright Office. Those registration numbers are VA 282–385, VA 282–387, VA 282–388, and VA 282–389. In late 1987, David A. Leibowitz, Esq., an attorney for plaintiffs, hired a private investigator, Michael C. Williams of Williams Investigation and Security, Cedar Rapids, Iowa, to conduct an investigation for Olan Mills and PPA. Mr. Leibowitz forwarded five photographs, a memorandum entitled "General Instructions For Investigator," a "Sample In–Store Affidavit," and photocopies of affidavits prepared by an investigator in Florida to Mr. Williams. Each photo-

graph had an Olan Mills' copyright notice on the front and back.

On December 29, 1987, Mr. Williams visited the Linn Photo store at 105 1st Avenue, S.E., Cedar Rapids, Iowa, and requested a 5″ by 7″ enlargement of the photo registered as VA 282–387. On January 9, 1988, Mr. Williams visited the Linn Photo store at 2405 Westdale Drive, S.W., Cedar Rapids, Iowa, and requested a 5″ by 7″ enlargement of the photo registered as VA 282–389. Also on January 9, 1988, Mr. Williams went to the Drug Town store located at 1440 32nd Street, N.E., Cedar Rapids, Iowa, and ordered an enlargement of the photo registered as VA 282–385. He also went to a Drug Town store located at 24 Wilson Avenue, S.W., Cedar Rapids, Iowa, and ordered an enlargement of the photo registered as VA 282–388. Drug Town forwards its photographic enlargement orders to Linn Photo for processing. Mr. Williams subsequently picked up and paid for the enlargements of each of these photos from the respective stores.

It is undisputed that with respect to the three photos submitted by Mr. Williams for enlargement on January 9, 1988, Mr. Williams signed a "Permission to Copy Agreement" which reads as follows:

THIS IS TO STATE THAT I AM THE OWNER OF THIS PHOTOGRAPH AND HAVE NOT GIVEN ANY ONE ELSE PERMISSION TO COPYRIGHT THIS PHOTOGRAPH. I AM SUBMITTING IT TO LINN PHOTO COMPANY FOR A COPY AT MY REQUEST. THIS COPY IS FOR MY PERSONAL USE, AND I AGREE TO HOLD HARMLESS, LINN PHOTO COMPANY OR ANY OF ITS AGENTS, FROM ANY LIABILITY ARISING FROM THE COPYING OF THIS PHOTOGRAPH.

It is disputed as to whether Mr. Williams signed a similar form with respect to the photograph submitted to Linn Photo on December 29, 1987. No copy of such a signed agreement has been found. However, the December 29, 1987 order envelope bears a code indicating that such an agree-

ment was obtained. It is Linn Photo's practice to retain such agreements when obtained. The "Permission to Copy Agreement" was drafted by the president of Linn Photo, Robert Priborsky, in 1985. The Linn Photo forms were signed by Mr. Williams pursuant to plaintiffs' express written instructions.

The motions for summary judgment raise several issues. The court will address each in turn.

### 3. Does PPA Have Standing in This Matter?

■ On June 27, 1988, this court denied defendant Hy–Vee Foodstores, Inc.'s March 8, 1988 motion to dismiss plaintiff PPA.[1] The court concluded that PPA has associational standing to participate in this suit, reasoning as follows:

The requirements for associational standing have been clearly set forth by the Supreme Court.

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 [97 S.Ct. 2434, 2441, 53 L.Ed.2d 383] (1976). The court finds that the requirements set out in *Apple* have been met by plaintiff PPA. In short, PPA members who own the copyrights to their photographic works would have standing to sue in their own right; the interest PPA seeks to protect, the value of members' copyrights in photographic works, is germane to PPA's purpose, which presumably is to represent the best interests of its members; and PPA does not assert a claim or request relief which requires the participation in this lawsuit of PPA's individual members. Cases cited by the parties to

---

1. Defendant Hy–Vee Foodstores, Inc., d/b/a Drug Town, was subsequently dismissed from

this suit. *See* consent judgment and order, filed May 15, 1989.

the effect that only copyright owners or exclusive licensees have standing to sue for copyright infringement, *see Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir.1982), do not resolve the standing issue presented by this motion since PPA's members are the copyright owners, and since the requirements of associational standing are otherwise met.

Order, filed June 27, 1988, at 4–5.

Defendant Linn Photo asks the court to revisit this issue. The basis of defendant's argument is that the first element of the test has not been met because there is no evidence that PPA members have registered any copyrights. Under 17 U.S.C. § 411(a), "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title."

Linn Photo characterizes this portion of its motion and memorandum as a motion for "judgment on the pleadings," but argues, more in keeping with a motion for summary judgment, that plaintiffs have failed to produce evidence of copyright registration by PPA members. *See* defendant's memorandum, filed November 7, 1990, at 6–7. As plaintiffs have construed this portion of the motion as one for judgment on the pleadings, the court will address this issue as a motion for judgment on the pleadings. The standard which this court applies to a motion for judgment on the pleadings is different than the standard applied to a motion for summary judgment. A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that movant is entitled to judgment as a matter of law. *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of N. Am.*, 627 F.2d 853, 855 (8th Cir.1980). The court must construe all

well pleaded factual allegations of the non-moving party as true and draw all reasonable inferences from those facts in favor of the nonmovant. *Quality Mercury, Inc. v. Ford Motor Co.*, 542 F.2d 466, 468 (8th Cir.1976), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977).

The complaints, filed February 16, 1988, allege that PPA "represents approximately 16,000 members, including Plaintiff Olan Mills." Complaints at ¶ 4.[2] The complaints further allege that members of PPA are the "sole owners of copyright in their professionally created photographs." *Id.* at ¶ 6. Plaintiff Olan Mills registered the photographs specifically involved in this lawsuit. *Id.* at ¶ 7. A reasonable inference can be drawn from the complaints that other members of PPA have registered their copyrights. Thus, with respect to a motion for judgment on the pleadings, the court finds that PPA has associational standing to participate in this suit. However, in light of this court's resolution, discussed below, of the question of whether or not a declaratory judgment should issue with respect to other photographs not specifically involved in this suit, this question of standing is essentially a moot point. The court makes no statement as to whether the court would find that PPA has associational standing if the question is presented in the context of a motion for summary judgment.

### 4. Request for Declaratory Judgment

■ Plaintiffs' complaints allege violations of the Copyright Act of 1976, codified at 17 U.S.C. § 101 et seq. The complaints allege that defendant Linn Photo reproduced the four photographs at issue in violation of that act. Plaintiffs request that the court enter: (a) a declaratory judgment pursuant to 28 U.S.C. § 2201, "that federal law prohibits defendant from reproducing or publicly distributing copies of plaintiff Olan Mills' and other professional

2. On February 16, 1988, plaintiffs filed two complaints. *See* complaint, filed February 16, 1988, in *Olan Mills, et al. v. Linn Photo Co.*, No. C89–0005 (N.D.Iowa); complaint, filed February 16, 1988, in *Olan Mills, et al. v. Hy–Vee Food Stores, Inc., d/b/a Drug Town, and Linn Photo*, 731 F.Supp. 1416 (N.D.Iowa). These two actions were consolidated by the court into C89–0004 by order entered July 27, 1989. Defendant Hy–Vee Foodstores, Inc., d/b/a Drug Town, was dismissed on May 15, 1989.

photographer members of plaintiff PPA's copyrighted professionally created photographs without their consent;" (b) a preliminary and permanent injunction pursuant to 17 U.S.C. § 502(a) restraining defendants from reproducing or publicly distributing plaintiffs' professionally created photographs; (c) an order awarding plaintiffs full costs and attorneys' fees pursuant to 17 U.S.C. § 505; and (d) an order awarding plaintiffs the maximum statutory damages for willful infringement pursuant to 17 U.S.C. § 504(c)(2), plus any other justifiable equitable relief.

Title 28, U.S.C. § 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction, ... any court ... may declare the rights and legal relations of any interested party seeking such declarations, whether or not further relief is or could be sought." As previously noted, the copyright statutes permit an action for infringement to be maintained *only* when the copyright has been registered. 17 U.S.C. § 411(a). The court may issue a declaratory judgment only when there is an "actual controversy" between the parties.

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). No actual controversy exists if the complaint presents "an abstract question 'based upon the possibility of a factual situation that may never develop.'" *Hendrix v. Poonai*, 662 F.2d 719, 722 (11th Cir.1981) (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir.1967)).

In this case, there is certainly an actual controversy as to the four registered photographs. However, the court finds that its decision in this matter should not go beyond those four photographs. First, plaintiffs have presented no specific evidence in resistance to defendant's motion for summary judgment on this issue which suggests that any other photographs have been registered by Olan Mills or PPA. In fact, Olan Mills admits that it generally does not register its copyright in portraits. Second, declaratory judgments are used in "copyright infringement actions by the party threatened by an infringement suit [who] seeks a declaration that he is not infringing or as to the validity of the registration." *Prudent Publishing Co., Inc. v. Myron Mfg. Corp.*, 722 F.Supp. 17, 22 (S.D.N.Y.1989) (citing *Walker Process Equip. Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965)). *See generally* 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 2761 (1983); *Xerox Corp. v. Apple Computer, Inc.*, 734 F.Supp. 1542, 1545–46 (N.D.Cal.1990). Plaintiffs have cited no authority, and this court's search has disclosed no authority, permitting a declaratory judgment action brought by the copyright owner for a declaration of infringement of an unregistered copyright. Title 28, U.S.C. § 2201, does not create an independent base for federal jurisdiction, *see, Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th Cir.1989), and the court lacks jurisdiction to entertain a suit for copyright infringement until the copyright is registered. *See* 17 U.S.C. § 411(a). Third, Olan Mills concedes that it does, on some occasions, permit the portrait subjects to obtain reproductions from outside sources. *See* final pretrial order, filed March 8, 1991, at ¶¶ R, KK. Thus, reproduction by Linn Photo of Olan Mills' portraits would not constitute infringement in all cases. Given these factors, the court finds that the issuance of a declaratory judgment is inappropriate in this case. The court will address the issues raised with respect to the four specific photographs.

## 5. *Unclean Hands/Fraud*[3]

 The court next addresses defendant's contention that the copyright in-

---

**3.** The court does not view plaintiffs' resistance to this argument by defendant as a motion for summary judgment on defendant's counterclaim for fraud.

fringement, assuming any occurred, was procured by unclean hands and/or fraud and thus excuses defendant from any liability. Defendant argues that Olan Mills sought to mislead and deceive defendant by instructing Mr. Williams to sign the indemnification agreement with no intention of honoring that agreement. Defendant further argues that Olan Mills dealt with defendant for the sole and improper purpose of initiating litigation.

> [An] equitable maxim [is] that 'he who comes into equity must come with clean hands.' This maxim ... is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.... Thus while 'equity does not demand that its suitors shall have led blameless lives' as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.

*Precision Co. v. Automotive Co.*, 324 U.S. 806, 814–15, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945) (in context of patent infringement action) (citations omitted). "Generally, the clean hands doctrine applies to actions by which a party acquires the claim which it presses." *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979) (citing cases). The claimed inequitable conduct giving rise to unclean hands must relate to the transaction in litigation. *See Butler v. Butler*, 253 Iowa 1084, 114 N.W.2d 595, 619–20 (1962) (citing cases). The doctrine of unclean hands applies only to bar equitable remedies and does not bar legal remedies, although the conduct giving rise to unclean hands may bar the legal remedy under a different theory. *Ellwood v. Mid–States Commodities, Inc.*, 404 N.W.2d 174, 184 (Iowa 1987) (citing D. Dobbs, *Handbook on the Law of Remedies*, § 2.4, at 46 (1973)). In the copyright context, unclean hands may bar injunctive relief but would not bar recovery of statutory damages. *Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507 n. 8 (4th Cir.1969). Although the defense of unclean hands is not favored by the Iowa courts, the Iowa courts have not hesitated to apply the defense when warranted by the facts of the case. *Iowa Dep't of Transp. v. Nebraska–Iowa Supply Co.*, 272 N.W.2d 6, 15 (Iowa 1978) (citing cases).

Plaintiffs contend that Linn Photo was not entrapped into reproducing the photographs, as Linn Photo was already predisposed to reproduce Olan Mills' photographs and because Linn Photo viewed Mr. Williams as no different than a regular customer. Olan Mills also notes that Linn Photo had been given notice that Olan Mills viewed Linn Photo's actions as copyright infringement.

The court agrees with plaintiffs that the defense of unclean hands is unavailable to Linn Photo. While the failure to disclose the relationship between Olan Mills and Mr. Williams was, in a sense, deceptive, it is not the kind or degree of deception which gives rise to a defense of unclean hands. While it is true that Linn Photo would probably not have reproduced the photographs if the relationship had been disclosed, Linn Photo has cited no duty on the part of plaintiffs or Mr. Williams to disclose their relationship. Linn Photo was not "entrapped."

*6. Express Authority*

■ Defendant argues that the owner of the copyright in the four photographs, Olan Mills, gave Mr. Williams express instructions and authority to authorize Linn Photo to reproduce those photographs. The instructions given to Mr. Williams provide, in part:

> 1. When seeking reprints, pose as an ordinary customer using your own name.... We do not want to be in a position where another party can suggest that we asked you to lie on our behalf.
>
> . . . .
>
> 3. When seeking reprints, the sales person may ask you to sign a form releasing them from any liability or responsibility for making the reprints. In such a case, sign the form, make sure that you receive a copy either then or when your reprint order is ready for pick-up.

4. The sales person may state they [sic] they can't make copies of the photograph with the copyright notice appearing as it is. The sales person may then either (a) request permission to cut-off or otherwise remove the copyright notice; or (b) request that you do so. In such a case, give the sales person permission or follow any instructions regarding how you remove the notice.

General instructions for investigator, attached to defendant's memorandum, filed November 7, 1990, as defendant's exhibit 102.

A fundamental principle of agency law is that whatever an agent does, within the scope of his actual authority, binds his principal. Actual authority to act is created when a principal intentionally confers authority on the agent either by writing or through other conduct which, reasonably interpreted, allows the agent to believe that he has the power to act. Actual authority includes both express and implied authority. Express authority is derived from specific instructions by the principal in setting out duties, while implied authority is actual authority circumstantially proved.

*Dillon v. City of Davenport,* 366 N.W.2d 918, 924 (Iowa 1985) (citations omitted). It is undisputed that Olan Mills owned the copyright in the four photographs at issue. Mr. Williams was expressly instructed to "seek reprints" and to "sign a[ny] form releasing [Linn Photo] from any liability or responsibility for making the reprints." "The Linn Photo forms entitled 'Permission to Copy Agreement' signed by Mr. Williams were signed at Plaintiffs' express written request and direction in instructions from Plaintiffs' counsel Mr. Leibowitz." Final pretrial order, filed March 8, 1991, at 9. Thus, Mr. Williams' acts in requesting Linn Photo to reproduce the photographs and in signing the "Permission to Copy Agreement," which provides for the indemnification of Linn Photo from any liability arising from the copying of the photograph, are acts which bind Olan Mills as the principal.

"Title 17 explicitly gives authors the right to authorize use of their works."

*Steve Altman Photography v. United States,* 18 Cl.Ct. 267, 281 (1989). *See also* 17 U.S.C. § 106(1). Olan Mills expressly authorized Mr. Williams to obtain copies of the four photographs from Linn Photo. After authorizing use, a copyright holder cannot "retract his authorization and complain of copyright infringement." *Steve Altman,* 18 Cl.Ct. at 281. Thus, under the facts of this case, the copyright owner did authorize the reproduction of the four photographs, and indemnity agreements were signed for at least three of those photographs.

Plaintiffs contend that "it is amply clear that plaintiffs did not actually intend that Mr. Williams' actions would authorize Linn and thereby defeat the very litigation plaintiffs intended to bring." Plaintiffs' memorandum, filed February 4, 1991, at 44. Even though that may be a true statement, Olan Mills is not permitted to repudiate the expressly authorized act of its agent, Mr. Williams, on this basis. A principal may not expressly direct its agent to perform an act and then assert that it did not intend to be bound by that act.

The court must, at this point, separate two issues regarding consent and the indemnification agreement. First, as Olan Mills, the copyright owner in the four photographs, expressly authorized Mr. Williams to obtain reproductions of the four photographs from Linn Photo, there is no copyright infringement with respect to those photographs. "There are two elements to a copyright infringement claim: (1) the plaintiff must own a valid copyright, and (2) the defendant must have copied the plaintiff's work in the course of the defendant's business *without the plaintiff's approval.*" *Major League Baseball Promotion v. Colour–Tex,* 729 F.Supp. 1035, 1039 (D.N.J.1990) (citing cases) (emphasis added). Title 17, U.S.C. § 106 gives the copyright owner the exclusive right to authorize reproduction of its copyrighted works. Olan Mills did so authorize by instructing Mr. Williams to obtain reproductions. Accordingly, Linn Photo cannot be liable for copyright infringement under 17

U.S.C. § 501(a), because, with respect to the four photographs, Linn Photo was authorized to reproduce those photographs. As a matter of law, plaintiffs cannot prove their copyright infringement claims. Consequently, the court will grant Linn Photo's motion for summary judgment and deny plaintiffs' motion for partial summary judgment with respect to the plaintiffs' complaint.

### 7. Indemnification and Public Policy

The second issue is whether summary judgment should be granted with respect to Linn Photo's counterclaim for indemnification. As previously noted, there is a fact dispute with respect to one of the photographs as to whether or not any indemnification agreement was signed.[4] There is no dispute that indemnification agreements were signed for the other three photographs. Under Iowa law, an indemnitee may recover all reasonable expenses, including attorneys' fees, incurred in defending the claim for which he has been indemnified, unless the contract for indemnification provides otherwise. *See Bunce v. Skyline Harvestore Systems, Inc.*, 348 N.W.2d 248, 250 (Iowa 1984). No party has argued that the language of the indemnification agreement would not cover defendant's reasonable expenses, including attorneys' fees, incurred in defending this matter. The parties have essentially agreed that if the indemnification agreement is found valid, Olan Mills will assume any obligation on the part of Mr. Williams. *See* stipulation and order, filed December 10, 1990. The court now addresses plaintiffs' arguments that the indemnification agreements should not be enforced.

■ Plaintiffs argue that the "Permission to Copy Agreement" utilized by Linn Photo is contrary to public policy and is unenforceable and void in that it impairs a statutory benefit and encourages an unlawful scheme.

■ Under Iowa law, a contract which contravenes public policy will not be enforced. *See Walker v. American Family Mut. Ins. Co.*, 340 N.W.2d 599, 601 (Iowa 1983) (citing cases). "While the term 'public policy' is not susceptible of exact definition, the thrust of the legal principle that the term represents is quite clear: a court ought not enforce a contract which tends to be injurious to the public or contrary to the public good." *Id.* The court "must also weigh in the balance the parties' freedom to contract." *Id.* "[T]he power to invalidate a contract on public policy grounds must be used cautiously and exercised only in cases free from doubt." *Id.*

Much of of plaintiffs' discussion regarding public policy is directed to the declaratory judgment requested by plaintiffs. As discussed above, the court declines to consider a declaratory judgment with regard to plaintiffs' photographs in general, but does consider the four specific photographs. However, "[i]t is not necessary that the contract actually cause the feared evil in a given case; its tendency to have that result is sufficient." *Wunschel Law Firm, P.C. v. Clabaugh*, 291 N.W.2d 331, 335 (Iowa 1980) (citing *Jones v. American Home Finding Ass'n*, 191 Iowa 211, 182 N.W. 191, 192 (1921)).

Plaintiffs argue that the two objectives of the "Permission to Copy Agreement" are to prevent the effective use of investigators and to shift the duty of determining the right to copy from Linn Photo to the customer. Plaintiffs contend that these purposes violate public policy.

### A. Copyright Enforcement by Use of Investigators

Plaintiffs first assert that a necessary and accepted means of enforcing their copyright interests is to hire investigators to present copyright registered photographs for reproduction. Plaintiffs cite to numerous cases finding copyright infringement based on reproduction orders placed

---

**4.** The court rejects defendant's argument that the indemnity agreement signed by Mr. Williams at one Linn Photo store before picking up his reprint at the other Linn Photo store covers both photographs. *See* defendant's memorandum in support of motion for summary judgment, filed November 7, 1990, at 21–22.

by investigators. *See* plaintiffs' memorandum, filed February 4, 1991, at 22–24. As noted in this court's previous order, those cases do not involve situations where any indemnification agreement was signed by the investigator. *See Olan Mills v. Hy-Vee Foodstores, Inc.*, 731 F.Supp. 1416, 1419–20 (N.D.Iowa 1990). Nor are they cases, except for two, where a contention was raised that the copyright holder gave consent to copy. In *Olan Mills, Inc. v. Eckerd Drugs*, Memorandum Opinion and Order, Copyright L.Rep. (CCH) 26,420, 1989 WL 90605 (N.D.Tex. April 20, 1989), the issue was raised but not discussed by the court. *See* exhibit 7 to plaintiffs' resistance, filed February 4, 1991.[5] In *RCA Records v. All-Fast Systems, Inc.*, 594 F.Supp. 335 (S.D.N.Y.1984), the court dismisses the consent argument as follows:

I find frivolous defendant's argument that plaintiffs have presented no evidence of wrongful copying. Three times defendant's employees willingly and knowingly copied copyrighted tapes for plaintiff's investigators. Assuming that this particular copying was, as defendant argues, consented to by plaintiffs, the evidence establishes a strong inference, which defendant has done nothing to rebut, that the employees would and did do exactly the same copying for customers unconnected with plaintiffs. I find this to be more than adequate evidence of wrongful copying.

*Id.* at 338. The court does not find *RCA Records* to be persuasive in the context of this case. There are several major differences between this case and *RCA Records*. First, and foremost, no indemnification agreement was signed in *RCA Records*. Second, *RCA Records* involved whether or not a preliminary injunction should issue rather than a motion for summary judgment.[6] The issuance of a preliminary injunction requires only a showing of likelihood of success on the merits. Third, in this case there is no evidence that any photographs other than the four at issue were registered, while in *RCA Records* it appears that the tape recordings copied for other customers were registered. As discussed above, plaintiffs may proceed only on the basis of registered copyrights.

Plaintiffs contend that defendant's agreement frustrates this method of enforcement. The court agrees that the indemnification agreement does make it more difficult for the copyright holder to gather evidence of infringement. However, the use of private investigators to discover and enforce copyright infringement is not, per se, a public policy. The public policy involved here is the prosecution of infringements of the copyright. The court does not find that this public policy is violated by the indemnification agreement. Other methods to discover infringement and to enforce the copyright exist. First, plaintiffs may use investigators to inquire of their customers if they have obtained copies of photographs. Although customers may be unwilling to admit that they may have illegally obtained copies of their portraits, plaintiffs have the option of offering the customers immunity from suit. Second, from the cases cited by plaintiffs, it is evident that photo reproducers do not generally require the customer to sign an indemnification agreement and that the issue of consent is generally not raised.[7] Third, and perhaps most importantly, copyright holders do receive information regarding infringements from other sources.

---

5. Plaintiffs have also provided the court with a copy of a page of a transcript of a hearing held in *Professional Photographers of America v. 1240 Camera Co.*, Civ.No. 89–948 (D.N.J.) (date undisclosed), in which the court rejected "out of hand" an argument that an investigator can give consent to copying. This opinion is not binding on this court, and no reasons for that rejection (other than the consent argument is "baloney") are given. The court declines to place any weight on that finding.

6. After the entry of the preliminary injunction, defendant, desiring to terminate the litigation, consented to the entry of a permanent injunction and the payment of damages. *See RCA Records v. All-Fast Systems, Inc.*, No. 84 Civ. 631–CSH, 1984 WL 1318 (S.D.N.Y. December 10, 1984).

7. The court does note that its previous holding regarding express authority and consent would be valid even absent the investigator signing any consent form.

This last point is amply demonstrated by information contained in the final pretrial order. In 1981, Robert Becker (executive director of PPA) began receiving complaints "about photofinishers reprinting photographs taken by the photographer." Final pretrial order at ¶ AA. After David Phillips became general counsel for Olan Mills, he sent letters to photofinishers "who had been reported by Olan Mills personnel to have made reproductions of Olan Mills photographs." *Id.* at ¶ BB. He sent such letters to 313 different photofinishers. *Id.* A typical letter is set forth at ¶ CC. In 1987, Robert Becker requested PPA's counsel to send letters to photofinishers "where PP of A members documented reproduction of their professional photographs without their consent." *Id.* at ¶ EE. Thirteen such letters were sent. *Id.* A typical letter is set forth at ¶ DD. Under the specific facts of this case, in mid–1986, *prior to the time Mr. Williams was hired as an investigator,* counsel for Olan Mills contacted Mr. Priborsky "to give notice that Olan Mills objected to [the] reproducing of its photographs without its consent." *Id.* at ¶ G. Thus, Olan Mills discovered Linn Photo's alleged infringement without the use of a private investigator.

Although the court recognizes that copyright infringement such as that which is alleged here is more difficult to prove without the use of "investigative orders" and that the use of an indemnity agreement makes the effective use of investigators nearly impossible, the court does not find that the use of the indemnity agreement frustrates any "public policy" permitting the use of investigators. Investigators could still be used to show a pattern of conduct by an alleged infringer who does not know of the agency relationship and hence is ignorant of any consent given to the agent. As this court has analyzed this case, the express consent given by Olan Mills, not the indemnity language, defeats the claim of copyright infringement.

**B. Encouragement of Infringement**

■ Plaintiffs assert that defendant has a duty to investigate whether a lawful basis for copying exists. *See* plaintiffs' memorandum, filed February 4, 1991, at 24–25. Plaintiffs argue that, since the photographs contained Olan Mills' copyright notice and since defendant had been formally warned by Olan Mills that copying was unlawful, defendant "had a stringent duty to investigate and establish a lawful basis before copying." Plaintiffs' memorandum, filed February 4, 1991, at 25. Plaintiffs further argue that "[t]he Linn Form was wholly and plainly inadequate to satisfy Linn Photo's legal obligations." *Id.*

The first issue to be decided is the scope of any legal duty to investigate on Linn Photo's part. The second question to be decided is whether Linn Photo's "Permission to Copy" form satisfies that duty or is so insufficient that it must be declared void as a matter of public policy. Although the court must primarily focus on the four photographs specifically at issue, the court must also bear in mind the principle that "[i]t is not necessary that the contract actually cause the feared evil in a given case; its tendency to have that result is sufficient." *Wunschel,* 291 N.W.2d at 335.

The court begins with an examination of the cases cited by plaintiffs. The first case cited is *Quinto v. Legal Times of Washington, Inc.,* 506 F.Supp. 554, 563 (D.D.C. 1981). *Quinto* involved the application of 17 U.S.C. § 406(a), which establishes a complete defense to infringement, in cases where the person named on the document's copyright notice is not the copyright owner, for a copier who is misled by the copyright notice and who copies the work in good faith under a purported license from the person named in the copyright notice. In *Quinto,* the author of a student newspaper article brought an infringement action against a legal newspaper. The legal newspaper had reprinted the article after having received oral permission from a former editor of the student newspaper to reprint any article appearing in the student newspaper. The student newspaper contained a blanket copyright notice under 17 U.S.C. § 404(a). The individual article contained no copyright notice by the author but did contain a byline with the author's name. The court found that the § 406(a)

defense was not available to the legal newspaper, as it could not reasonably rely on the oral permission of the previous student newspaper editor, a vague promise of "mutual cooperation" by the current editor, or the failure to respond to a message left on the student newspaper's answering machine that the legal newspaper would reprint the article unless an objection was received. *Id.* at 562–63. The court also found that the legal newspaper editor could not have been misled by the blanket copyright notice since the author's name appeared on the article. *Id.* at 563. The court stated that "[a]t a minimum Beckwith had a duty to inquire whether the *Record* owned the copyright to Quinto's article in order to claim he was misled and acted in good faith." *Id.* Plaintiffs also cite to *De Acosta v. Brown,* 146 F.2d 408, 412 (2d Cir.1944), *cert. denied,* 325 U.S. 862, 65 S.Ct. 1198, 89 L.Ed. 1983 (1945), for the proposition that "the protection accorded literary property would be of little value if it did not go against third persons, or if, it might be added, insulation from payment of damages could be secured by a publisher by merely refraining from making inquiry." Finally, it is well established that "after notice of copyright has been published everyone is under the duty to learn the facts concerning the copyright, and copies at his peril." *Chappell & Co. v. Costa,* 45 F.Supp. 554, 555 (S.D.N.Y.1942) (citing cases); *Plymouth Music Co. v. Magnus Organ Corp.,* 456 F.Supp. 676, 681 (S.D.N.Y.1978). Plaintiffs also argue that the law specifically imposes a duty not to infringe upon those who make a business of copying the works of others. Plaintiffs cite *Washingtonian Publishing Co. v. Pearson,* 306 U.S. 30, 40, 59 S.Ct. 397, 402, 83 L.Ed. 470 (1939), for this proposition. The court finds no language in that case so holding or suggesting, although the court does not disagree with the proposition as a valid statement of copyright law.

After considering these cases, the court finds that Linn Photo does have a duty to investigate whether the person presenting a photograph for reproduction is the copyright owner or has secured authorization from the copyright owner for the reproduc-tion of the photograph. This conclusion, however, does not answer the question of whether Linn Photo's "Permission to Copy Agreement" is void as a matter of public policy.

■ The court must next consider whether Linn Photo met its duty of inquiry in this case. Linn Photo did make an inquiry of Mr. Williams, the person presenting the photographs for reproduction. The "Permission to Copy Agreement" requested Mr. Williams to certify that he was the owner of the photograph and that he had not given anyone else permission to copyright the photograph. Mr. Williams further agreed to hold Linn Photo harmless from any liability for the copying of the photograph. As previously discussed, Mr. Williams had express authority from Olan Mills to sign this form. Under the facts of this case, Mr. Williams was the agent of the owner of the copyright in the photographs, and Olan Mills had not given anyone else permission to copyright the photographs. In other words, Mr. Williams had the permission of the copyright owner to obtain copies of the copyrighted photographs.

■ Plaintiffs suggest that Linn Photo had to do more than obtain a signature on the "Permission to Copy Agreement," for example, by calling Olan Mills to inquire whether the person presenting the photograph had authorization to do so. Linn Photo responds that calling Olan Mills would have been economically unfeasible given the low profits derived from each individual photograph. The court agrees with Linn Photo that it was under no specific legal obligation to call Olan Mills directly. Further, while Linn Photo has a duty to investigate, a breach of that duty leads only to a suit for infringement and, perhaps, a finding of willfulness. Investigation is relevant primarily to willfulness, not to the strict liability which attaches for infringement.

The court does not find that any public policy is violated by the indemnity agreement. If unauthorized copying occurs, Linn Photo, along with the customer, is

still liable to the copyright holder for the copyright infringement. The indemnity agreement does not shift Linn Photo's liability to the copyright holder for infringement to the customer; it only provides Linn Photo with a contractual right of indemnification from the customer in the event that the customer intentionally or mistakenly informs Linn Photo that he or she either owns the copyright or is authorized to obtain a copy of the photograph. That right of indemnification is only as good as Linn Photo's ability to pursue indemnification against the customer.[8] The court is not presented in this case with the issue as to whether an infringer can be indemnified for its own infringement by a co-infringer.

There are situations where the customer is authorized to obtain reproductions of an Olan Mills photograph. First, copying of the four photographs involved in this case was expressly authorized by Olan Mills. Second, Olan Mills sometimes authorizes its customers to obtain copies of portraits after two years. See final pretrial order at ¶¶ R, KK. Third, it is possible that, in some circumstances, the portrait subject is a joint author with the photographer. In this court's order of January 4, 1990, the court declined to resolve this issue, as the four photographs at issue were not presented to Linn Photo by the subjects. See Olan Mills, 731 F.Supp. at 1420. The parties have devoted a considerable portion of their briefs to this issue. The court continues to decline to decide this difficult issue, as it is not squarely presented by the facts of this case, but merely notes that the possibility exists.

Olan Mills informs its customers that it claims the exclusive copyright in Olan Mills' portraits and that unauthorized copying is illegal and may lead to civil and criminal penalties. See final pretrial order at ¶ HH ("Important Notice About Copyright Protection" which is placed in Olan Mills' stores). Olan Mills' customers are on notice that they should obtain Olan

Mills' consent before obtaining reproductions from photofinishers such as Linn Photo. The court does not find that Linn Photo is in such a superior position vis a vis the customer regarding knowledge of copyright ownership that Linn Photo has a "stringent" duty to investigate copyright ownership while the customer has essentially no such duty.

Plaintiffs also assert that the duty to investigate includes the duty to obtain competent legal advice before engaging in potentially infringing activities when notice of potential infringement has been given. Plaintiffs cite to two patent infringement cases in support of this contention. See Bott v. Four Star Corp., 807 F.2d 1567, 1572 (Fed.Cir.1986); Underwater Devices Inc. v. Morrison–Knudsen Co., 717 F.2d 1380, 1389–90 (Fed.Cir.1983). In this case, Linn Photo was notified of Olan Mills' belief that Linn Photo was infringing Olan Mills' copyrights. Linn Photo apparently did not seek legal advice until after this lawsuit was commenced. However, the context of these cases indicate that whether or not a defendant has sought legal advice is relevant to the question of whether a proven infringement is willful. The court does not read these cases, as plaintiffs suggest, to hold that the indemnification agreement is invalid because Linn Photo did not seek legal advice before Mr. Priborsky drafted it.

■ The court finds nothing improper in Linn Photo meeting its duty to investigate by asking the customer to sign the "Permission to Copy Agreement." Linn Photo still runs the risk that the customer will sign the form without having the legal right to do so. The indemnity agreement, under the facts of this case, is not void on the basis of public policy.

### 8. Negligent or Intentional Conduct

■ Plaintiffs argue that the indemnity agreement does not purport to excuse Linn

---

**8.** The court does note that the indemnity agreement could more clearly explain the copyright laws and the obligation the customer is assuming by signing the form. However, no party has suggested that the indemnity agreement is vague

or indefinite. Further, no party has argued, from the viewpoint of the indemnitor/customer, that the agreement is unconscionable under Iowa law. See Home Fed. Sav. & Loan Ass'n v. Campney, 357 N.W.2d 613, 618 (Iowa 1984).

Photo from liability for negligent, reckless, willful, or intentional wrongdoing, or from liability for its systematic course of infringement. Under Iowa law, " '[t]he general rule is that an indemnity agreement will not be construed to relieve the indemnitee from the effect of its own negligence unless the agreement provides for it in 'clear and unequivocal' language.' " *Thornton v. Guthrie County Rural Elec. Coop. Ass'n*, 467 N.W.2d 574, 576 (Iowa 1991) (quoting *Payne Plumbing & Heating Co., Inc. v. Bob McKiness Excavating & Grading, Inc.*, 382 N.W.2d 156, 160 (Iowa 1986)). Indemnity is not available where there has been a showing of an intentional wrong. *Wright v. Haskins*, 260 N.W.2d 536, 538 (Iowa 1977) (citing cases); *Best v. Yerkes*, 247 Iowa 800, 77 N.W.2d 23, 27 (1956).

■■■ Liability for copyright infringement is independent of the intent with which the infringer acted. No scienter need be shown to prove infringement. *See Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.*, 807 F.2d 1110, 1113 (2d Cir.1986) (citing cases); *United States v. Moran*, 757 F.Supp. 1046, 1050 (D.Neb. 1991); *Little Mole Music v. Spike Inv., Inc.*, 720 F.Supp. 751, 754–55 (W.D.Mo. 1989); *Chappell & Co. v. Costa*, 45 F.Supp. 554, 555 (S.D.N.Y.1942). *See also* 17 U.S.C. § 504(c)(2) (court may reduce statutory damages where it has been shown that the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright"). Intent is relevant only to the decision whether or not to increase damages. A finding of willful infringement permits the court to increase statutory damages. *See* 17 U.S.C. § 504(c)(2). Negligence or recklessness has no relevancy to determining whether copyright infringement has occurred.

■■■ In this case, the court need not address the difficult question of whether the indemnity agreement at issue here is sufficient to require the signer of the agreement to indemnify Linn Photo from its strict statutory liability for any copyright infringement which may occur, and in particular from any infringement on Linn

Photo's part which is found to have been willful. As previously found by the court, Linn Photo did not infringe upon Olan Mills' copyright in the four photographs at issue, because the reproduction of those photographs by Olan Mills was expressly authorized. Thus, the court need not determine if the agreement is sufficient to indemnify Linn Photo against liability for copyright infringement, but need only determine if the indemnity agreement covers payment of Linn Photo's reasonable expenses in defending this suit, including attorneys' fees. As no party has argued otherwise, the court finds that this limited purpose is covered by the agreement.

With regard to plaintiffs' argument that defendant is engaged in a systematic course of infringement, the court reiterates its view that the court must focus on the four photographs at issue and not on the broad declaratory judgment relief sought by plaintiffs.

### 9. Conclusion

The court finds that Olan Mills, through its agent Michael C. Williams, expressly authorized Linn Photo to reproduce the four photographs at issue in this case. With respect to those four photographs, Linn Photo did not infringe upon Olan Mills' copyright. The court finds that a declaratory judgment regarding any other photographs is inappropriate for the reasons discussed above. The court finds that the indemnity agreements signed by Mr. Williams with respect to three of the photographs involved are valid and requires Olan Mills to pay Linn Photo's reasonable expenses, including attorneys' fees, related to Linn Photo's defense of the claim of copyright infringement with respect to those three photographs and to the pursuit of Linn Photo's counterclaim for indemnity. The court finds that a fact dispute precluding the entry of summary judgment on defendant's counterclaim for indemnity exists with respect to whether an indemnity agreement was signed for the fourth photograph at issue.

The court will withhold determination of the amount of reasonable expenses, includ-

ing attorneys' fees, to which defendant is entitled until after this remaining question is resolved.

### Jury Demand

Plaintiffs move to limit defendant's jury demand, filed February 4, 1991, to defendant's counterclaims for antitrust violations and to exclude from the jury all issues raised by plaintiffs' complaints and the defendant's counterclaim for indemnification. As a result of the court's rulings above, plaintiffs' complaints will be dismissed and the only remaining factual issue relating to the counterclaim for indemnification is whether or not an indemnification agreement was signed with respect to the photograph registered as VA 282–387. The parties' briefs on this motion primarily discuss whether or not a jury trial is available for a claim of copyright infringement. That issue is now moot. Plaintiffs make no argument that the question of whether or not an indemnification agreement for the fourth photograph exists is a question which may not be submitted to the jury.

### ORDER:

Accordingly, It Is Ordered:

1. Defendant Linn Photo's motion for leave to file supplemental reply brief, filed May 29, 1991, is granted. The clerk of court is directed to detach and file the supplemental reply brief attached to the motion.

2. Plaintiffs' cross-motion for leave to file sur-reply to supplemental reply brief, filed June 11, 1991, is granted. The sur-reply filed June 11, 1991 is deemed to be properly filed.

3. Defendant's motion to strike certain matters filed by plaintiffs in connection with their resistance to motion for summary judgment, filed February 15, 1991, is denied.

4. Defendant's motion for summary judgment, filed November 7, 1990, is granted in part and denied in part. The motion is granted with respect to plaintiffs' complaints. Plaintiffs' complaints are dismissed. The motion is granted with re-

spect to defendant's counterclaim for indemnification for the three photographs registered as VA 282–385, VA 282–388, and VA 282–389. The motion is denied with respect to defendant's counterclaim for indemnification for the photograph registered as VA 282–387. The court reserves ruling on the amount to be indemnified.

5. Plaintiffs' cross-motion for partial summary judgment, filed February 4, 1991, is denied.

6. Plaintiffs' motion to limit jury demand, filed February 4, 1991, is denied.

Done and Ordered.