827 F.2d 346
 Fed. Sec. L. Rep. P 93,356
Jack KRAUSE and Eugene V. Rankin, Appellants,
v.
Jerry D. PERRYMAN, Appellee.
Accutap Ltd.; Terry Wamsganz; Stifel, Nicolaus & Company,
Frank Reichwein, Appellee.
 No. 86-1379.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 10, 1986.
Decided Aug. 26, 1987.
 
 David L. Campbell, St. Louis, Mo., for appellants.
 Jerry D. Perryman, Clayton, Mo., pro se.
 Daniel T. Rabbitt, St. Louis, Mo., for Frank Reichwein.
 Before HEANEY and BOWMAN, Circuit Judges, and ARNOLD,* District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 This case presents a lengthy record of pleadings and discovery resulting in the dismissal by the District Court of all claims against defendants Jerry D. Perryman and Frank Reichwein, the appellees herein, prior to trial. Jack Krause and Eugene V. Rankin, plaintiff-appellants, brought suit against Accutap Ltd. (Accutap); Perryman, the president and a majority shareholder of Accutap; Reichwein, a former officer and former shareholder of Accutap; and several other parties, alleging that defendants had induced them by false representations concerning Accutap's financial status and patent rights to expend $250,000 purchasing worthless Accutap stock. Plaintiffs contend that defendants acted in concert to defraud them in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1961-1968 (RICO); federal and state securities laws; and common law rules of fraud and deceit.[1]
 
 
 2
 The District Court dismissed, for failure to state a claim, the count of the complaint alleging that Perryman, Reichwein, and Accutap had violated section 17(a) of the Securities Act of 1933. With respect to all other claims, the District Court dismissed without prejudice as to Accutap and Perryman,[2] and granted summary judgment in favor of Reichwein. Plaintiffs contend that the District Court erred in all these rulings. We affirm the orders of the District Court in all respects.
 
 I.
 
 3
 The undisputed facts are as follows. Accutap was a Missouri corporation formed by Perryman and Reichwein in 1978 to manufacture, distribute, and sell an electronically-operated beverage dispenser. In January 1981, Reichwein sold his interest in Accutap to Perryman and two friends of Perryman, Harvey Cantor and Sherwin Wayne. Reichwein was compensated therefor by means of a "consulting agreement" that provided for payments of $4580 per month for 60 months. Plaintiffs first became involved with Accutap in the fall of 1981 when Terry Wamsganz, a registered securities representative, introduced them to Perryman. Following a series of meetings with Perryman, plaintiffs agreed to purchase 384,000 shares of convertible preferred Accutap stock in December 1981, nearly one year after Reichwein's sale of his interest in Accutap. Plaintiffs agreed to pay a total of $500,000, which sum included a payment of $50,000 to buy out the consulting agreement between Accutap and Reichwein.
 
 
 4
 Plaintiffs allege that in making their investment decision, they relied upon a private placement memorandum prepared by Perryman that inaccurately reported Accutap's income, grossly overstated existing sales contracts, and falsely stated that Accutap owned the patent for its product. Plaintiffs also allege that Perryman represented to them that they would be made officers and directors of the corporation, that a public offering of stock was in the works, and that the money plaintiffs invested would be used to manufacture taps for existing sales contracts. They allege that each of these statements was false.
 
 
 5
 Plaintiffs made an initial payment of $250,000, including $50,000 to Reichwein to buy out his consulting agreement, but did not receive the directorships they had been offered or even stock certificates. Moreover, they discovered that Accutap's certificate of incorporation did not authorize the issuance of preferred stock. Plaintiffs determined that Perryman knew and did not reveal that several of the sales contracts for Accutap products, which were shown to them as an inducement to purchase stock, had been cancelled or were in difficulty prior to the time that plaintiffs made their stock purchase. Finally, plaintiffs discovered that the $200,000 they had paid directly to Accutap had been used to repay old loans and not for the manufacture of new taps. Plaintiffs then refused to make further payment.
 
 
 6
 In setting forth their RICO claim, plaintiffs allege a history of misrepresentation by Perryman and Reichwein in the establishment and maintenance of Accutap. The complaint alleges that Perryman and Reichwein acted in concert from the inception of Accutap to use that corporation as a vehicle by which to pocket illegal gains. Plaintiffs allege that in carrying out this plan, Perryman and Reichwein stole patent rights, procured bank loans by means of fraudulent income statements, and defrauded individual investors in violation of securities laws and mail and wire fraud statutes. Plaintiffs implicate Perryman in the entire series of alleged bad acts leading to their loss, including the creation of the bogus private placement memorandum and their purchase of Accutap stock on the basis of material misrepresentations. However, plaintiffs do not allege that Reichwein was involved at all in the creation of the private placement memorandum or in their purchase of Accutap stock. Nor do they present any evidence, beyond Reichwein's continuing receipt of payments pursuant to the consulting agreement, that would implicate Reichwein in the activities of Accutap following his sale of all his Accutap stock in January 1981.
 
 II.
 
 7
 Plaintiffs appeal the dismissal by the District Court of their claim against Perryman and Reichwein under section 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77q(a). In Shull v. Dain, Kalman & Quail, Inc., 561 F.2d 152, 155, 159 (8th Cir.1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), this Court held that no private cause of action may be maintained for violation of section 17(a). The District Court, relying on Shull, held that plaintiffs had failed to state a cognizable section 17(a) claim. Order of March 25, 1983. Plaintiffs ask us to overturn the ruling in Shull. Even were we so inclined, which we are not, this panel has no authority to overrule Shull. United States v. Lewellyn, 723 F.2d 615, 616 (8th Cir.1983) ("Only the court en banc is empowered to change an existing rule of law."); see also Deviries v. Prudential-Bache Securities, Inc., 805 F.2d 326, 328 (8th Cir.1986). We therefore affirm the District Court's dismissal of plaintiffs' section 17(a) claim.
 
 III.
 
 8
 Plaintiffs argue that the District Court erred in dismissing without prejudice their remaining claims against Perryman. The District Court's order of January 31, 1986 (as amended February 5, 1986) notes that all claims against Perryman were stayed pursuant to the automatic stay provisions of the bankruptcy code, 11 U.S.C. Sec. 362. (All claims against Accutap previously had been stayed as a consequence of its bankruptcy proceeding. See Order, October 1, 1982.) The court then proceeded to dismiss all claims against Perryman and Accutap without prejudice.[3]
 
 
 9
 The District Court's dismissal without prejudice of plaintiffs' claims against Perryman occurred following an off-the-record, in-chambers conference and an exchange of letters between counsel for plaintiffs and for Perryman in which the ramifications of Perryman's stated intent to declare bankruptcy were discussed. The culmination of these exchanges was the order that is set forth in the margin of this opinion.
 
 
 10
 Plaintiffs contend that the in-chambers agreement between the parties was that Perryman would file for bankruptcy under Chapter 7 of the Code, not under Chapter 13, as he in fact did.[4] Plaintiffs further contend that they did not intend to give up any rights, and that continuance rather than dismissal was contemplated, while Perryman contends that plaintiffs did in fact agree to dismiss all their claims in the present action and to pursue the remedies available to them in bankruptcy court.
 
 
 11
 The District Court's understanding of the in-chambers agreement obviously was in accord with Perryman's. If plaintiffs believed that the order entered by the District Court dismissing their claims against Perryman without prejudice did not accurately reflect the agreement of the parties, they should have called this to the District Court's attention and given that court an opportunity to rule on their contentions. Plaintiffs easily could have done this by means of a motion under Fed.R.Civ.P. 59(e) to alter or amend the judgment or under Fed.R.Civ.P. 60(b) for relief from the court's judgment or order. Since they did not do so, they gave the District Court no opportunity to consider their claim that the court's order was not in accord with the in-chambers agreement. The issue not having been raised below, it is not properly before us, and we should not and will not address it. Consequently, plaintiffs' attack on this aspect of the judgment below fails, and we affirm the District Court's dismissal without prejudice of the claims against Perryman.
 
 IV.
 
 12
 Plaintiffs argue that the District Court erred in granting summary judgment in favor of Reichwein. They allege a continuing conspiracy among Perryman, Accutap, and Reichwein. Their claims against Reichwein rest on the assertion that Reichwein, through continued receipt of funds from Accutap in 1981 and 1982 and knowledge of the past activities of Accutap and Perryman, had not withdrawn from the alleged conspiracy, but was still an active conspirator who was "sitting this one out." Whether Reichwein in fact already had withdrawn from the alleged conspiracy at the time plaintiffs allegedly were defrauded is determinative of the existence of triable claims against Reichwein.[5] In summary judgment terms, the question is whether Reichwein's continued receipt of payments pursuant to his consulting agreement, without more, is sufficient to create an issue of fact as to whether he had withdrawn from the alleged conspiracy before plaintiffs came into Perryman's sights. The District Court ruled that this was not sufficient to create a triable issue and granted summary judgment in favor of Reichwein.
 
 
 13
 In reviewing the order granting Reichwein's motion for summary judgment, this Court is governed by the same standard as was the District Court in its consideration of that motion. Elbe v. Yankton Independent School District No. 1, 714 F.2d 848, 850 (8th Cir.1983). A motion for summary judgment may be granted only if an examination of all the evidence in a light most favorable to the nonmoving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir.1986). We must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. Id. However, while "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and not be such as merely to create a suspicion.' " Metge v. Baehler, 762 F.2d 621, 625 (8th Cir.1985), cert. denied, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) (quoting Impro Products, Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir.1983), cert. denied, 465 U.S. 1026 (1984)). See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed.Rule Civ.Proc. 56(e)--"purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' ")
 
 
 14
 In the present case, it is undisputed that Reichwein sold all his stock and resigned as president of Accutap in January 1981.[6] Perryman has testified that Reichwein relinquished his entire interest in Accutap in January 1981, see Perryman deposition, October 21, 1985, at 65-67. On the other hand, plaintiffs have demonstrated nothing more than suspicion that Reichwein still was involved in Accutap after January 1981. Despite extensive discovery, they have not come forward with any evidence that Reichwein did not make a clean break with Perryman and Accutap long before plaintiffs came into the picture. Plaintiffs argue that Reichwein's past involvement in sales to other investors, his knowledge that the sale of stock to plaintiffs had occurred, and his receipt of $50,000 from them as a buy-out of his consulting agreement are sufficient to create an issue of material fact as to Reichwein's continued involvement. Appellants' Brief at 26. We disagree. Plaintiffs have made no showing that Reichwein was involved in any sales to any investors after he relinquished his interest in Accutap in January 1981. An investor's knowledge of other stock sales and his receipt of monies paid to him as consideration for the sale of his interest in an enterprise hardly can be viewed as evidence of his continuing post-sale participation in the enterprise. In addition, we note that it was plaintiffs who suggested the buyout of Reichwein's consulting agreement. We also note that plaintiffs concede that it was never intended that Reichwein would perform any of the services listed in his consulting agreement. Appellants' Brief at 6. Plaintiffs simply did not present any evidence sufficient to create a triable issue of fact on their claim that Reichwein had not withdrawn from the alleged conspiracy prior to the events that resulted in their alleged injuries. The factual material presented to the District Court pointed in only one direction: that Reichwein had withdrawn from the alleged conspiracy in January 1981, many months before plaintiffs had their initial contact with either Perryman or Accutap. That being the case, Reichwein was entitled to summary judgment as a matter of law.
 
 
 15
 For the reasons stated above, the orders of the District Court are AFFIRMED.
 
 
 
 *
 The HONORABLE MORRIS S. ARNOLD, United States District Judge for the Western District of Arkansas, sitting by designation
 
 
 [1]
 Plaintiffs initiated suit in 1982 against Accutap; Perryman; Reichwein; Stifel, Nicolaus & Company, Inc., a brokerage and underwriting firm (Stifel); Terry Wamsganz, a registered representative employed by Stifel; and several other parties, alleging claims based on the federal securities laws (section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. Sec. 78j(b); Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. Sec. 240.10b-5 (1986); and section 17(a) of the Securities Act of 1933, 15 U.S.C. Sec. 77q(a)), and on common law fraud and deceit. In February 1985, plaintiffs amended their complaint to include claims that defendants (now reduced in number to the five parties named above) violated RICO and the Missouri Blue Sky Law, Mo.Rev.Stat. Secs. 409.301 & 409.411(a) & (b) (1986). In January 1986, plaintiffs settled all claims against Stifel and Wamsganz, who then were dismissed from the suit. Order, January 28, 1986. Accutap was forced into involuntary bankruptcy in 1982, and action against it was stayed pursuant to 11 U.S.C. Sec. 362. See Order, October 1, 1982. It appears to have no assets. The District Court ultimately dismissed without prejudice all claims against Accutap, and thus there is no question that the judgment below is a final judgment. See Order, January 31, 1986 (as amended February 5, 1986) infra n. 3. In this appeal, plaintiffs raise issues only with respect to Perryman and Reichwein
 
 
 [2]
 In January 1986, Perryman expressed his intention to file for voluntary bankruptcy. The parties thereafter agreed that once Perryman had declared bankruptcy under Title 11 of the United States Code, all claims against Perryman and Accutap would be dismissed without prejudice. When it was established that Perryman had filed a petition for relief under the Bankruptcy Act, the District Court entered an order dismissing all claims against Perryman and Accutap without prejudice. See infra n. 3
 
 
 [3]
 The order dismissing without prejudice all claims against Perryman and Accutap states:
 Defendant Perryman having presented to the Court proof of his filing in the U.S. Bankruptcy Court, E.D.Mo. of a petition for relief under the U.S. Bankruptcy Act, Title 11, U.S.C., and all proceedings herein being therefore automatically stayed pursuant to the provisions of 11 U.S.C. Sec. 362, and the Court having been apprised by the plaintiffs of their intentions to pursue their claims against defendant Perryman in the U.S. Bankruptcy Court, E.D.Mo., the Court, on its own motion, and on notice to plaintiffs, and without objection having been heard, dismisses plaintiffs' First Amended Complaint against defendant Perryman without prejudice and against defendant Acccutap, Ltd. without prejudice. Accordingly, all matters as to all the parties herein have been disposed of.
 Order, January 31, 1986 (as amended February 5, 1986). Plaintiffs have not appealed the dismissal of Accutap.
 
 
 [4]
 Perryman initially filed a Chapter 13 petition in the Bankruptcy Court. That court, on its own motion, converted the Chapter 13 proceeding to a Chapter 11 proceeding
 
 
 [5]
 In Sedima SPRI v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), the Supreme Court held that a plaintiff states a civil RICO claim under 18 U.S.C. Sec. 1964(c) "[i]f the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property." (emphasis added). The District Court concluded that this language requires a "causal link between defendant Reichwein's alleged racketeering activities and plaintiffs' alleged injury." Order, January 24, 1986 at 3. We agree. As did the District Court, we believe that the requisite causal link cannot be present unless Reichwein was still part of the alleged conspiracy at the time plaintiffs became involved with Perryman
 
 
 [6]
 Reichwein's testimony is that the $4580 per month he received under the consulting agreement was simply a means of paying him for the sale of his stock, and that the consulting agreement form of payment was an afterthought. Reichwein Deposition, April 1, 1983 (April Deposition) at 48-49, 82. He also was to receive royalties on each Accutap unit sold. April Deposition at 46, 84. In addition, he received fifty-eight Accutap units, April Deposition at 49-50, and approximately $12,000 in funds due him from the distribution of Accutap units in Mexico. Reichwein Deposition, November 14, 1985 (November Deposition) at 47-48; April Deposition at 79. Reichwein testified that he accepted the $50,000 from plaintiffs and terminated his right to receive the monthly payments and royalties because he was becoming more and more uncertain of the willingness of the Accutap shareholders to meet their obligations to him. November Deposition at 110. Plaintiffs have disputed this testimony in their pleadings, but have not produced any evidence to refute it