**UNITED STATES of America, Plaintiff,**

v.

**SWISS VALLEY FARMS COMPANY, INC., and Joseph Gau, Defendants.**

No. 95–10055.

United States District Court, C.D. Illinois.

Oct. 30, 1995.

Matthias A. Lydon, Winston & Strawn, Chicago, IL, Richard J. Braun, Nashville, TN, for Swiss Valley Farms Co.

Gary R. Spratling, U.S. Dept. of Justice, Antitrust Division, San Francisco, CA, Steven E. Uhr, Diane C. Lotko–Baker, Frank J. Vondrak, James M. Griffin, U.S. Dept. of Justice, Antitrust Division, Chicago, IL, Joel I. Klein, U.S. Dept. of Justice, Acting Assistant Attorney General, Washington, DC, for U.S.

***ORDER***

McDADE, District Judge.

In response to the Government's Motion *in limine* regarding the issue of withdrawal, an

evidentiary question was raised by Defendants. The issue presented involves the admissibility of evidence and the submission of an instruction to the jury indicating that Defendants—by resuming competitive bidding during August of 1986—withdrew from the conspiracy.

The Seventh Circuit has stated that "[w]ithdrawal [from a conspiracy] requires an affirmative act on the part of the conspirator; he must either make a full confession to the authorities, or communicate to each of his coconspirator that he has abandoned the conspiracy and its goals." *United States v. Sax,* 39 F.3d 1380, 1386 (7th Cir.1994). In other words, "the conspirator must take affirmative steps to *defeat* or *disavow* the conspiracy's purpose." *Id.* Defendants argue that evidence showing a resumption of competitive bidding by Defendants is also admissible as affirmative action to defeat or disavow the purpose of the bid rigging conspiracy. Based on *United States v. United States v. Gypsum, Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), this Court agrees.

In *Gypsum,* the Supreme Court stated, "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach coconspirators have generally been regarded as sufficient to establish withdrawal or abandonment." *Id.* at 464–65, 98 S.Ct. at 2887–88. Consequently, the Supreme Court concluded that both evidence and argument could be presented to the jury to show that, by resuming competitive activities, the defendant withdrew from the conspiracy. Furthermore, resumption of competitive behavior could be included in a jury instruction as a basis for withdrawal from the conspiracy. Therefore, in this case, evidence and jury instructions regarding resumption of competitive activity can be used to show an affirmative act by Defendants to withdraw from the charged conspiracy.

Nevertheless, this conclusion does not completely resolve this issue because the perception is that the Government alleges that there is evidence that simultaneous with or subsequent to resuming competitive bidding practices, payments were still being received on the rigged bids. Consequently, there is an issue whether Defendants effectively withdrew from the conspiracy by resuming competitive bidding practices. The Second and Third Circuits have concluded that even if a defendant has "severed his ties" with a conspiracy in such a manner that ordinarily a withdrawal will be found, a defendant does not withdraw from a conspiracy if he "continues to receive benefits from the conspiracy's operations." *United States v. Antar,* 53 F.3d 568, 583 (3d Cir.1995) (resignation from a corporation insufficient to establish a withdrawal because defendant continued to receive "the fruits of the fraud;" i.e, the defendant retained stock in the corporation after his resignation); *United States v. Eisen,* 974 F.2d 246, 269 (2d Cir.1992) (the defendant's resignation from the conspiring law firm was not sufficient to constitute a withdrawal because he "'continued to be entitled to a percentage of the recovery on all cases he tried including those giving rise to his pre-[resignation] racketeering acts.'"), *cert. denied,* 507 U.S. 1029, 113 S.Ct. 1840, 123 L.Ed.2d 467 (1993); *see also Krause v. Perryman,* 827 F.2d 346 (8th Cir.1987) (in a civil case, the defendant effectively withdrew from the conspiracy by "[selling] all his stock and resign[ing] as president of [the conspiring enterprise]").

Based on the decision in *Sax,* the Court believes that the Seventh Circuit would agree with the Second and Third Circuits that if a defendant seeking to withdraw from a conspiracy does acts inconsistent with such a withdrawal—such as continuing to receive benefits from the conspiracy—there is no withdrawal. Such a conclusion is consistent with *Sax.* In *Sax,* Sax asserted that he had withdrawn from the conspiracy by informing various members of the conspiracy that he no longer wanted to be involved in distributing marijuana and by selling his distribution business. *Sax,* 39 F.3d at 1383. In response to this argument the Seventh Circuit stated:

> To accept Sax's argument that he had withdrawn from this conspiracy at the moment he sold his business to Eichorn would turn the doctrine of withdrawal on its head. Sax's sale can hardly be characterized as "'some act to disavow or defeat the purpose [of the conspiracy].'" On the con-

trary, the evidence demonstrates that ...
Payment to Sax for the business was con-
tingent on future drug sales.... Sax ...
continue[d] enjoying the fruits of the ongo-
ing conspiracy.

*Id.* at 1387 (citations omitted). Similarly, in
this case, one or more of the alleged conspir-
ators, depending on the evidence presented,
may have continued to receive payments on
the rigged bids—i.e., continued to enjoy the
fruits of the charged conspiracy—after re-
suming competitive practices. If such pay-
ments were received, such a conspirator did
not sever all ties with the conspiracy by
resuming competitive bidding practices. The
Court finds that if the evidence shows that a
conspirator continued to receive payments on
the rigged bids subsequent to resuming com-
petitive bidding practices, as a matter of law,
such a conspirator cannot establish a with-
drawal from the conspiracy because that con-
spirator continued to enjoy the fruits of the
charged conspiracy.