Brian **LUBBEN** and Brice Lubben, Executors of the Estate of Klein Lubben, Appellants,

v.

**CHICAGO CENTRAL & PACIFIC RAILROAD COMPANY,** Appellee.

No. 96–146.

Supreme Court of Iowa.

May 21, 1997.

Frederick W. James of James Law Firm, P.C., Des Moines, and Tom L. Drew of Drew Law Firm, Des Moines, for appellants.

Edward J. Krug of Krug Law Firm, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

We must determine whether a state tort claim for alleged negligent failure to install adequate warning devices at a rural railroad crossing is preempted by federal law due to federal funding of the devices at the crossing. The district court concluded that the Federal

Railroad Safety Act of 1970, 45 U.S.C.A. § 421 *et seq.* (West 1986) (FRSA) (current version at 49 U.S.C. § 20101 *et seq.* (1997)), preempted such a claim in this case and granted summary judgment for the defendant railroad. Because we find no error, we affirm.

I. *Background facts and proceedings.* This negligence action was precipitated by an automobile-train accident. In the early hours, during darkness, of November 8, 1992, plaintiffs' decedent, Klein Lubben, was fatally injured when he drove his automobile into the midsection of a Chicago Central & Pacific Railroad Company (CCP) freight train at a railroad crossing in Delaware County, Iowa. Two trains per day traveled through that rural crossing.

At the time of the accident, the railroad crossing was equipped with reflectorized crossbucks mounted on wooden posts which had been erected in the mid–1980s as part of a passive sign project undertaken by the Iowa Department of Transportation (DOT) and the Illinois Central Gulf Railroad Company, CCP's predecessor in interest. Ninety percent of the cost of the project was paid by Federal Highway Administration funds pursuant to the FRSA, while the remaining ten percent was paid by the railroad. A memo dated September 13, 1985, verified that the DOT had inspected and approved the installation of all reflectorized crossbucks in Delaware County. In June 1986, the DOT verified the railroad's completion of work under the project agreement.

In the summer of 1992 the gravel road leading to the railroad crossing had been paved, and Delaware County officials had asked defendant CCP to determine whether further warning devices would be necessary. Although it is unclear what, if any, recommendation the railroad made in that regard, a county engineer testified in a deposition that the county did not rely on the railroad when making its decision about warning devices at the railroad crossing.

In June 1994 plaintiffs Brian Lubben and Brice Lubben, the executors of Klein Lubben's estate, brought this action in Iowa district court alleging that defendant CCP acted negligently in various ways, including failure to provide adequate lighting and signals at the crossing and to warn of the train's presence. CCP answered and filed a motion for summary judgment based on the preemptive effect of federal funding of the railroad crossing warning devices under the FRSA and related administrative regulations.[1]

The district court granted CCP's motion for summary judgment. Based on several federal cases, the court reasoned that the test for preemption was "whether federal funds were used to pay for the warning devices that exist at the railroad crossing where the accident occurred." It concluded that federal funds had been used to purchase and install the warning devices at the railroad crossing in question and thus that plaintiffs' claims regarding the adequacy of the warning devices and method of warning of the approaching train were preempted by federal law.

Plaintiffs appealed.

II. *Standard of review.* We review the district court's grant of summary judgment in accordance with well-established principles. We uphold summary judgment when there is no material issue of fact and the moving party shows it is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c). We must examine the record in the light most favorable to the nonmoving party. *C–Thru Container Corp. v. Midland Mfg. Co.*, 533 N.W.2d 542, 544 (Iowa 1995). Where, as here, the facts are undisputed and only the legal consequences flowing from those facts are at issue, summary judgment is appropriate. *Toomey v. Surgical Servs., P.C.*, 558 N.W.2d 166, 167 (Iowa 1997). Our review, therefore, is for errors of law. Iowa R.App. P. 4.

III. *Preemption of plaintiffs' claims.* Plaintiffs contend that the mere expenditure of federal funds under the FRSA, without an assessment by a diagnostic team of the adequacy of the warning devices for the particular railroad crossing where the accident occurred, cannot trigger preemption of their

---

1. The district court had previously granted CCP's motion for partial summary judgment in connection with plaintiffs' claim that the railcars were improperly reflectorized.

claims. Thus, they argue that the district court erred in granting defendant CCP's motion for summary judgment.

A. In 1970 Congress enacted the FRSA in order "to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and to reduce deaths and injuries to persons . . . ." 45 U.S.C.A. § 421 (West 1986). The Act directed the Secretary of Transportation (Secretary) to establish rules and regulations in connection with railroad safety, *id.* § 431(a), and to develop and implement solutions to grade crossing safety problems, *id.* § 433(b). Congress addressed the preemptive effect of such rules and regulations in 45 U.S.C.A. § 434, which provides:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety *until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.* A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

(Emphasis added.) Pursuant to the Secretary's recommendations on the problem of grade crossing safety, Congress allocated federal funds to states, through the Highway Safety Act of 1973, for the improvement of grade crossings. *See* 23 U.S.C.A. §§ 101 *et seq.* In order to receive the funding, the states were required to identify grade crossings in need of warning devices and to plan for the installation of such devices. *Id.* § 130(d). The passive sign project undertaken by the State of Iowa and Illinois Central Gulf Railroad Company was part of that program. Accordingly, the railroad placed the federally-funded reflectorized crossbucks warning devices at the railroad crossing in the present case. The DOT inspected and approved the installation.

Regulations promulgated pursuant to the FRSA defined the requirements for warning devices at railroad crossings. Automatic gates with flashing lights must be installed when any of the following conditions exist:

(A) Multiple main line railroad tracks.

(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

(C) High speed train operation combined with limited sight distance at either single or multiple track crossings.

(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

(F) A diagnostic team recommends them. 23 C.F.R. § 646.214(b)(3)(i) (1995). Thus, that regulation apparently pertains to multiple or high-volume tracks. If a diagnostic team determines that gates are not appropriate in an individual case, the above requirements may not be applicable. *Id.* § 646.214(b)(3)(ii). The requirements for other, or low-volume, crossings were set forth as follows:

> For crossings where the requirements of section 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of [the Federal Highway Administration].

*Id.* § 646.214(b)(4). Because none of the conditions of 23 C.F.R. section 646.214(b)(3) were met in this case, section 646.214(b)(4) is applicable.

■ B. The applicability here of 23 C.F.R. section 646.214(b)(4) leads us to consider the issue of preemption. The doctrine

of federal preemption is based on the Supremacy Clause of Article VI of the United States Constitution. U.S. Const. art. VI, cl. 2. Federal preemption is explicit when Congress expressly states its intention to preempt state law; preemption is implicit when Congress indicates its intention to occupy an entire field of regulation. *Olson v. Prosoco, Inc.,* 522 N.W.2d 284, 293 (Iowa 1994). Courts are reluctant to find preemption; thus, the party seeking to establish preemption must show that it is "the clear and manifest purpose of Congress." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387, 396 (1993) (citation omitted).

Pointing to the express preemption provisions of 45 U.S.C. § 434, the United States Supreme Court stated in *Easterwood* that state tort law is explicitly preempted when 23 C.F.R. sections 646.214(b)(3) and (4) are applicable. *Easterwood,* 507 U.S. at 670, 113 S.Ct. at 1740–41, 123 L.Ed.2d at 400. The Court noted that the language in 45 U.S.C. § 434 referring to "any state law, rule, regulation, order, or standard relating to railroad safety" encompasses legal duties imposed on railroads by the common law. *Id.* at 664, 113 S.Ct. at 1737, 123 L.Ed.2d at 396–97. Although the Court found that the grade crossing state claim in that case was not preempted because it was not established that federal funds "participated" in the installation of the warning devices at issue, it indicated that the expenditure of federal funds is the key to preemption. *Id.* at 671–72, 113 S.Ct. at 1741, 123 L.Ed.2d at 401. The Court noted:

> In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. *The Secretary's regulations therefore cover the subject matter of state law* which ... seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.

*Id.* at 671, 113 S.Ct. at 1741, 123 L.Ed.2d at 401 (emphasis added).

Thereafter, several United States Courts of Appeals have interpreted *Easterwood* to mean that the expenditure of federal funds for warning devices at a particular railroad crossing, without more, is sufficient to trigger preemption of state law claims in regard to the adequacy of those devices. *See Armijo v. Atchison, Topeka & Santa Fe Ry.,* 87 F.3d 1188, 1189–90 (10th Cir.1996); *Elrod v. Burlington N. R.R.,* 68 F.3d 241, 244 (8th Cir.1995); *Hester v. CSX Transp., Inc.,* 61 F.3d 382, 386 (5th Cir.1995); *St. Louis Southwestern Ry. v. Malone Freight Lines, Inc.,* 39 F.3d 864, 866 (8th Cir.1994); *Hatfield v. Burlington N. R.R.,* 1 F.3d 1071, 1072 (10th Cir.1993).[2] These courts have concluded that the expenditure of federal funds for warning devices at a particular crossing presumes federal approval, in accordance with 23 C.F.R. section 646.214(b)(4), of the devices for that crossing. *See Armijo,* 87 F.3d at 1191–92; *Elrod,* 68 F.3d at 244; *Hester,* 61 F.3d at 387.

Indeed, federal law prohibits such expenditure of federal funds unless the Secretary has determined that the warning devices to be installed are adequate. 23 U.S.C.A. § 109(e) provides:

> No funds shall be approved for expenditure on any Federal-aid highway ... unless proper safety protective devices *complying with safety standards determined by the Secretary at that time as being adequate* shall be installed or be in operation at any highway and railroad grade crossing or drawbridge on that portion of the highway with respect to which such expenditures are to be made.

(Emphasis added.) *See Hester,* 61 F.3d at 387 ("The fact that federal funds participated in the installation of the warning devices legally presupposes that the Secretary approved and authorized that expenditure, which in turn legally presupposes that the Secretary determined that the safety devices installed were adequate to their task."). The thread linking these authorities seems to be

**2.** The United States Court of Appeals for the Seventh Circuit has taken a contrary view, urging that *Easterwood* should not be read "literally." *See Shots v. CSX Transp., Inc.,* 38 F.3d 304, 307 (7th Cir.1994).

that the Secretary would not provide federal funds if the Secretary did not approve the warning devices as adequate for the crossing.

C. We agree with the district court and believe that, under the applicable statutes, regulations, and the principles articulated in *Easterwood* and the cases interpreting it, plaintiffs' state common law claims based on the adequacy of the warning devices at the railroad crossing where the accident occurred are preempted by federal regulation. The parties do not dispute that federal funds were expended on the installation of those warning devices. Such expenditure, under 23 C.F.R. section 646.214(b)(4), triggers federal preemption. This conclusion furthers Congress' intent, as expressly articulated in 45 U.S.C. § 434, to promote the uniformity of laws relating to railroad safety.

Moreover, the preemption of grade crossing warning device claims does not preclude other types of claims in connection with crossing accidents. For example, plaintiffs in state tort actions might allege failure to sound the train's whistle, train speed faster than federal limits, failure to use the train's headlights, inadequate maintenance of the warning device, and inadequate maintenance of the crossing surface. *See Kiemele v. Soo Line R.R.*, 93 F.3d 472, 475 (8th Cir.1996) (recognizing claims that railroad breached duty by blocking crossing and failing to maintain crossbucks at crossing); *Stewart v. Madison*, 278 N.W.2d 284, 289–91 (Iowa 1979) (holding that issue of train's failure to sound its whistle was properly submitted to jury). Plaintiffs' argument that federal preemption in this case will preclude any liability for railroads with regard to railroad crossing safety has no merit.

We find no error in the district court's ruling granting summary judgment for defendant CCP.

IV. *Disposition.* We find other arguments by the parties to be without merit or unnecessary to consider. The ruling of the district court is affirmed.

**AFFIRMED.**