ESTATE OF Brentley James STRANDBERG, deceased, by his administrator, Jerry Strandberg, Plaintiff,

v.

CHICAGO, CENTRAL & PACIFIC RAILROAD COMPANY, a Delaware corporation, also known as and doing business under the fictitious name, Canadian National/Illinois Central Railroad (CN/IC), Defendants.

No. C02–0029.

United States District Court,
N.D. Iowa,
Central Division.

Feb. 25, 2003.

Frederick W. James, The James Law Firm, PC, George F. Davison, Jr., Hawkins & Norris, Des Moines, IA, for Plaintiff.

R. Todd Gaffney, Finley Alt Smith Scharnberg Craig Hilmes & Gaffney, PC, Des Moines, IA, for Defendants.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the defendant's December 10, 2002 motion for summary judgment (docket number 12). The parties have consented to the exercise jurisdiction by a United Stated Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the motion is granted in part and denied in part.

This action arose out of a collision between a pick-up truck and a train, resulting in the death of the driver of the truck. In this case, the plaintiff, Estate of Brentley James Strandberg, deceased, by his administrator, Jerry Strandberg, alleges that the defendant, Chicago, Central & Pacific Railroad Company, was negligent in the following respects: its warning and safety devices at its grade crossing; its train was traveling at an excessive speed; it failed to equip the train with a whistle or other warning device; it negligently placed equipment near the track which limited sight distances to the west; and it was the proximate cause of the death of the plaintiff's decedent.[1] The defendant moves for

---

1. The plaintiff initially brought suit against the defendant in Iowa state court, alleging that the defendant was negligent. The defendant removed the case to federal court pursuant to 28 U.S.C. § 1441. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

summary judgment, arguing: (1) the plaintiff's negligence claims involving the warning devices at the railroad crossing are preempted by federal law; (2) federal law preempts any state law claim based upon the speed of the train being excessive; (3) federal law preempts any state law claim based upon the adequacy of the whistle used on the defendant's train; and (4) the evidence establishes that the plaintiff's negligence was the sole proximate cause of the accident.

### Summary Judgment: The Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prod., Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir. 1983)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987).

### Statement of Undisputed Material Facts

The collision in question occurred at the crossing located on Geneseo Street in Storm Lake, Iowa. Geneseo Street runs perpendicular to and crosses the defendant's railroad tracks at DOT Railroad Crossing No. 307–508E, railroad milepost 428.55. At this intersection, the defendant's railroad tracks consist of a main line set of tracks and a set of siding tracks. The main line set of tracks is the northern tracks and the siding is the southern set. The defendant's train was traveling eastbound on the northern main line set of tracks. There was also a third set of tracks located parallel to and south of the siding tracks. This third set of tracks is west of Geneseo Street and does not intersect with the street. At the time of the collision, railroad maintenance equipment was parked on this third set of tracks. It was placed at the end of the non-revenue siding. A building is located to the south of the crossing.

On May 5, 2001, Brentley James Strandberg was driving a vehicle northbound on Geneseo Street. Jeff Paulsen was a passenger in the vehicle. At that same time and place, the defendant's freight train, consisting of two locomotives and 92 cars, was headed eastbound on the defendant's main line. At the time of the incident, Mr. Strandberg had the radio on in his vehicle, the windows were rolled up, and he was speaking with his passenger. As Mr. Strandberg entered the intersection, a collision occurred between his vehicle and the lead locomotive of the defendant's freight train. As the vehicles collided, the engineer placed the train into an emergency stop. The incident in question occurred between railroad mile marker 428 and mile marker

429. Mr. Strandberg died as a result of this collision.

Located approximately 211 feet, according to the defendant, or 243 feet, according to the plaintiff, south of the crossing was a yellow advance warning sign indicating the presence of the railroad crossing. Reflectorized passive crossbuck warning signs were located on each side of the crossing. As the defendant's train approached the Geneseo Street grade crossing, the locomotive was traveling at a speed of 26–28 miles per hour. The railroad tracks that intersect with Geneseo Street are classified by the Federal Railroad Association as "Class 3" tracks. Under this classification, the speed limit for a train between mile marker 428 and 429 is 30 miles per hour. The defendant's event recorder indicated that the train's headlights, bell, and whistle were activated in accordance with railroad operating practices as the train approached the Geneseo Street grade crossing.

In 1984 or 1985, federal funds were used in the installation of warning devices at the crossing in question. 90% of the costs were paid for by Federal Highway Administration highway safety funds. In either 1988 or 1989, there were changes made to the Geneseo Street crossing. These changes included the raising of the profile of the second track. Ties for the main line track and the passing track immediately south of the main line were replaced. The passing track was raised to a point where it was close to level with the main line. Asphalt and timber crossings on the main line and the south passing siding were removed and replaced with rubberized crossings. Federal funds were not involved in this modification of the grade crossing.

### Conclusions of Law

#### Preemption Generally

In 1970, Congress enacted the Federal Railroad Safety Act (FRSA) in order "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101 (1994). This Act directed the Secretary of Transportation to establish rules and regulations in connection with railroad safety and directed the Secretary to develop and implement solutions to grade crossing safety programs. *Id.* § 20103(a). The preemptive effect of these rules and regulations is set forth in § 20106:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order— (1) is necessary to eliminate or reduce an essentially local safety or security hazard; (2) is not incompatible with a law, regulation, or order of the United States Government; and (3) does not unreasonably burden interstate commerce.

*Id.* § 20106.

Pursuant to the Secretary of Transportation's recommendations regarding the problem of grade crossing safety, Congress allocated federal funds to states through the Federal Highway Safety Act of 1970 (FHWA) for the improvement of grade crossings. Federal regulations, 23 C.F.R. §§ 646.214(b)(3) and (4), promulgated by the Secretary of Transportation through the FHWA, delineate the warning

devices that must be installed at a railroad crossing when the installation of those devices is funded by the federal government. These regulations provide:

(3)(i) 'Adequate warning devices,' under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more or the following conditions exist:

(A) Multiple main line railroad tracks.

(B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

(C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.

(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combinations of these conditions.

(F) A diagnostic team recommends them.

(ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

(4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

23 C.F.R. §§ 646.214.

■ When applicable, these regulations preempt state law. *CSX Transp., Inc. v.*

*Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); *St. Louis Southwestern Ry. Co. v. Malone Freight Lines, Inc.,* 39 F.3d 864 (8th Cir.1994). The Geneseo Street crossing falls within the purview of the latter catch-all provision because none of the triggering conditions found in the former provision were present at that particular crossing. The applicability of 23 C.F.R. § 646.214(b)(4) requires the court to address the issue of preemption.

*Plaintiff's Preempted Claims*

The Supreme Court has held that federal grade crossing regulations preempt state-law tort claims if federal funds were used to install the warning devices at the crossing where the accident occurred. *CSX Transp., Inc. v. Easterwood,* 507 U.S. at 671, 113 S.Ct. 1732. The Court explained that federal grade crossing regulations may preempt a railroad's state-law duties when the regulations "cover" the same subject matter as a plaintiff's state-law claim. *Id.* at 664, 113 S.Ct. 1732. The Court found that the federal grade crossing regulations in 23 C.F.R. §§ 646.214(b)(3) and (4) covered the same subject matter as inadequate warning device claims under state law. *Id.* at 669, 113 S.Ct. 1732. Therefore, the Court concluded that when these regulations apply, "state tort law is preempted." *Id.*

■ "Federal funding is the touchstone of preemption in this area because it indicates that the warning devices have been deemed adequate by federal regulators." *Elrod v. Burlington Northern R. Co.,* 68 F.3d 241, 244 (8th Cir.1995). The "participation" of federal funds for warning devices at a particular railroad crossing, without more, is sufficient to trigger preemption of state law claims regarding the adequacy and maintenance of those devices. *CSX Transp., Inc. v. Easterwood,*

507 U.S. at 670, 113 S.Ct. 1732; *Lubben v. Chicago Cent. & Pac. R.R. Co.,* 563 N.W.2d 596, 599 (Iowa 1997). "[O]nce the FHWA has funded the crossing improvement and the warning devices are actually installed and operating, the regulation 'displace[s] state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained.'" *Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 354, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000) (quoting *CSX Transp., Inc. v. Easterwood,* 507 U.S. at 670, 113 S.Ct. 1732). The Eighth Circuit has followed the holding of the Supreme Court. *See, e.g., St. Louis Southwestern Ry. Co. v. Malone Freight Lines, Inc.,* 39 F.3d at 867 (holding "preemption occurs when all the devices prescribed in the [FHWA]-approved upgrade plan are installed and operating.").

It is undisputed in this case that federal funds were used in the installation of the crossbucks at the Geneseo Street crossing. Such expenditure triggers federal preemption. Thus, the defendant has established the first requirement for preemption by establishing the participation of federal funding. On the second prong, it is undisputed that the warning devices were installed and operating at the time of the collision. There is nothing in the record that indicates that they were not operational at the time of the collision. Because the parties do not dispute that federal funds were expended to install the crossbucks at the Geneseo Street crossing, and no genuine factual dispute exists as to whether the crossbucks were actually operating, the plaintiff's claims regarding the defendant's alleged failure to provide adequate warning devices are preempted by federal law.

The plaintiffs argue that because the defendant made significant changes to the grade crossing in 1988 or 1989 without the use of federal funds, federal preemption is inapplicable. The Eighth Circuit has held that "[a]fter federally funded warning devices are installed and operating, federal preemption occurs." *Kiemele v. Soo Line R.R.,* 93 F.3d 472, 476 (8th Cir.1996) (citing *Elrod v. Burlington Northern R. Co.,* 68 F.3d at 244). "We continue to hold that once federal funds have been expended towards grade crossing safety devices, and those devices are installed and operating, state law negligence claims are preempted by federal regulations." *Bryan v. Norfolk and W. Ry. Co.,* 154 F.3d 899, 904 (8th Cir.1998). "Preemption is not a water spigot that is turned on and off simply because a later decision is made to upgrade a crossing.... [O]ur cases clearly hold that once a federally funded warning device is installed and operational—the crossbucks in this case— preemption occurs." *Bock v. St. Louis Southwestern Ry. Co.,* 181 F.3d 920, 923 (8th Cir.1999) (citations omitted). "What States cannot do-once they have installed federally funded devices at a particular crossing-is hold the railroad responsible for the adequacy of those devices." *Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. at 358. Based on these cases, there is no support for the plaintiff's argument that subsequent modifications to a grade crossing would affect the applicability of preemption. It should also be noted that the changes made to the grade crossing were not significant to the issues presented in this case. There is no evidence that any changes were made to the warning devices. In fact, the plaintiff admits the crossbucks at Geneseo Street had not been modified since they were installed. This court therefore concludes that federal law preempts the plaintiff's claims based on the adequacy and maintenance of the warning devices installed at the Geneseo Street crossing. Summary judgment in favor of the defendant is granted on all

claims regarding the adequacy of the warning devices.

 The preemption of grade crossing warning device claims does not preclude other types of claims in connection with crossing accidents. *See Lubben v. Chicago Cent. & Pac. R.R. Co.,* 563 N.W.2d at 600. Therefore, the court will examine the plaintiff's remaining claims. The plaintiff also alleges that the defendant's train was operating at an excessive speed for conditions. The parties agree that federal law governs the track speed limits. The track in this case is a Class 3 track, with a speed limit of where the collision occurred of 30 miles per hour. The plaintiff nonetheless alleges that the defendant was negligent in operating the train at approximately 26–28 miles per hour.

The Supreme Court has held that the maximum allowable speeds codified in 49 C.F.R. § 213.9(a) cover "the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings" and preempt common law tort claims asserting that a train traveled at an excessive speed. *CSX Transp., Inc. v. Easterwood,* 507 U.S. at 675. The Court in *Easterwood,* however, reserved ruling on whether preemption of excessive speed claims extends to "bar suits for breach of related tort duties, such as the duty to slow or stop a train to avoid a specific, individual hazard." *Id.* at 675 n. 15, 113 S.Ct. 1732.

 State tort law claims for excessive speed are preempted by the FRSA if the train was operating within the federally prescribed speed limits. *Id.* at 675, 113 S.Ct. 1732. Therefore, any complaint by the plaintiff that the defendant was negligent in operating the train at 26–28 miles per hour, within the federally-mandated speed limits, is clearly preempted if that claim was based only on the conditions at the crossing. *See id.* However, the plaintiff claims that the defendant should have

imposed a slow order due to the equipment placed on the track.

The court finds no evidence to support the plaintiff's assertion that a slow order should have been imposed. The train was already traveling at a speed below the speed limit. The plaintiff's claim of failure to maintain a slow speed to avoid potential hazards at this crossing is simply another way of claiming the train was traveling at an excessive speed. The plaintiff is essentially trying to reclassify the track in question by arguing that the train should have been going even further below the speed limit. The plaintiff's excessive speed claim is preempted and summary judgment in favor of the defendant is appropriate.

 The plaintiff also claims that the train's whistle and bell were not appropriate and the headlights were not configured in a proper manner. "It has long been settled that Congress intended federal law to occupy the field of locomotive equipment and safety...." *Law v. Gen. Motors Corp.,* 114 F.3d 908, 910 (9th Cir.1997). "[V]irtually all state regulations affecting the train itself appear preempted by federal law." *Mo. Pac. R.R. v. R.R. Comm'n of Tex.,* 850 F.2d 264, 268 (5th Cir.1988). If each state were allowed to adopt different standards of liability for trains involved in interstate commerce, equipment would have to be changed as the train crossed state lines or the railroad would have to adhere to the standard set by the most stringent state, and Congress' goal of uniform federal railroad regulations would be undermined. *First Sec. Bank v. Union Pac. R.R. Co.,* 152 F.3d 877, 880 (8th Cir. 1998). The plaintiff does not allege that the operators of the train negligently failed to sound the whistle or illuminate the headlights. Such a claim would not be preempted by the FRSA. *See Lubben v. Chicago Cent. & Pac. R.R. Co.,* 563 N.W.2d at 600. Instead, the plaintiff al-

leges that the whistle and headlights merely were not adequate. The evidence establishes that the whistle, bell, and headlights were all activated prior to the collision. The passenger in the vehicle simply states that he did not hear the whistle or see the headlights. This does not create a genuine issue of material fact as to whether these devices were activated. Other witnesses to the collision stated they heard a whistle and saw headlights and a recorded data printout indicates that the whistle and headlights were activated just prior to the collision. The plaintiff's claim of inadequate whistle is preempted by federal law and summary judgment is appropriate.

█ Regarding the headlights, the plaintiff asserts they should have been oscillating because there is a building to the south and west of the crossing that blocks the headlights. When the Secretary of Transportation sets maximum operational train speed at a grade crossing, he does so only after assessing the track conditions, including obstructions to visibility. *O'Bannon v. Union Pac. R.R. Co.*, 960 F.Supp. 1411, 1423 (W.D.Mo.1997) (citations omitted). Because federal regulations cover the same subject matter as the plaintiff's claim, federal law preempts any claim that the defendant failed to provide proper sight distance with regard to the headlights and the building. Therefore, any claim regarding the adequacy of the headlights is also preempted.

Further, regarding the plaintiff's claim that the defendant was negligent in failing to properly train and supervise its employees, there is no evidence that the defendant in fact failed to do so. Summary judgment is granted in favor of the defendant on this claim.

### Plaintiff's Surviving Claims

█ The defendant contends that the plaintiff's negligence was the sole proximate cause of the accident. The defendant asserts that the plaintiff was under a duty to look and listen for trains and made no attempt to slow or stop his vehicle upon approaching the tracks. The defendant further contends that no railroad equipment obstructed the plaintiff's ability to see the oncoming train. The plaintiff claims that the defendant created dangerous conditions at the Geneseo Street crossing and the defendant therefore was the proximate cause of the collision. Questions of negligence and proximate cause are generally for the jury and may be decided as a matter of law only in exceptional cases. This court finds that the issue of causation is a factual one that is properly determined by the jury. Therefore, summary judgment is inappropriate on the issue of proximate cause.

█ Finally, the court finds an issue of material fact exists as to whether the defendant's placement of maintenance equipment on the side tracks was negligent. The plaintiff claims that the equipment made the Geneseo Street crossing extra hazardous and it severely limited sight distances to the west. The defendant claims that the equipment did not obstruct the plaintiff's decedent to see oncoming trains because he could have seen the train above and through the equipment. This court is unable to determine as a matter of law whether the placement of equipment on the side tracks was negligent and whether it was a proximate cause of this accident. Therefore, summary judgment is denied as to any claims by the plaintiff regarding the negligent placement of the defendant's equipment.

Upon the foregoing,

IT IS ORDERED that the defendant's motion for summary judgment (docket number 12) is granted in part and denied in part. Summary judgment is granted as to the plaintiff's claim of failure to adequately train and supervise employees and for all claims regarding inadequate warn-

ing devices and these claims are hereby dismissed. Summary judgment is denied as to all claims regarding the defendant's placement of maintenance equipment on the siding and on the issue of proximate cause.